UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

JOHN MATTERA,
a/k/a "JD Mattera,"

Defendant.

---

**SEALED INDICTMENT**

24 Cr.

**24 CRIM 117**

## COUNT ONE
### (Securities Fraud)

The Grand Jury charges:

### Overview

1.  From at least in or about March 2021 through at least in or about February 2024, JOHN MATTERA, a/k/a "JD Mattera," the defendant, engaged in a scheme to defraud investors in PreIPO Corporation ("PreIPO"), a private company he controlled that purported to be developing a platform that investors and broker-dealers could use to trade in privately held companies expected to go public in the near future ("pre-IPO companies"). MATTERA and his associates raised approximately $4.7 million by misleading investors as to his involvement in PreIPO and as to how the investors' funds would be spent. Ultimately, MATTERA and his associates misappropriated much of those investor funds, using the money for their personal benefit.

2.  In or about 2013, JOHN MATTERA, a/k/a "JD Mattera," was previously convicted in the Southern District of New York of securities fraud, sentenced to 11 years in prison, and barred by the Securities and Exchange Commission ("SEC") from participating in the securities industry. Upon his release from prison in 2021, MATTERA and others working at his direction created PreIPO. To hide MATTERA's criminal record from potential investors and to circumvent his bar

from the securities industry, however, MATTERA and others working at his direction installed a purported management team at PreIPO that did not include MATTERA and represented to investors that that team (and not MATTERA) managed PreIPO. MATTERA nonetheless exercised *de facto* control over the company. He hired and fired management and staff, authorized final approval for disbursements of investor funds, reviewed solicitation materials disseminated to investors, set the strategic direction of the company, and was its controlling shareholder and largest creditor.

3. JOHN MATTERA, a/k/a "JD Mattera," the defendant, and others working at his direction also falsely represented to investors that PreIPO was raising capital to develop its technology platforms and generate revenue through subscriptions to its platform. No platform was in public operation and PreIPO generated no significant revenue from subscriptions to the platform. Moreover, contrary to the representations made to investors, MATTERA and his associates diverted large portions of investor funds to themselves, disguised using purported licensing and retainer agreements executed between entities they controlled and PreIPO. For example, MATTERA licensed trademarks like "PreIPO.com" to PreIPO for approximately $5 million, plus royalties. Approximately 38% of the approximately $4.7 million that PreIPO raised from investors was paid directly to companies that MATTERA and other PreIPO principals controlled. MATTERA personally obtained nearly $1 million from defrauded investors.

### Background on PreIPO

4. Privately held companies, in contrast to public companies, are generally both more difficult to invest in and more difficult to acquire information about. While shares in public companies are, by definition, traded on public exchanges, and thus have an easily discernible market price, sales of shares in private companies, and the prices of those shares, are negotiated

between buyer and seller and may not be disclosed to other investors. Further, while public companies must file financial statements and other information with the SEC, private companies are generally not required to provide information about their financial soundness, revenue, or expected growth to the public. JOHN MATTERA, a/k/a "JD Mattera," the defendant, told investors that PreIPO would bring transparency to the pre-IPO market and give retail investors more opportunities to invest in private companies, including closely held high-tech and high-growth startups.

5.    In June 2013, after pleading guilty in the Southern District of New York to securities fraud, wire fraud, and money laundering, JOHN MATTERA, a/k/a "JD Mattera," the defendant, was sentenced to 11 years in federal prison for defrauding investors in an earlier investment scheme. In a related SEC civil proceeding, MATTERA was permanently barred from participating in the issuance, offer, or sale of any security. MATTERA was released from federal prison on or about March 12, 2021, and is currently serving a three-year sentence of supervised release.

6.    PreIPO was incorporated on or about March 8, 2021, days before MATTERA's release from prison. At all relevant times, MATTERA controlled a majority of the shares of PreIPO through entities he controlled.

**The Scheme to Defraud**

7.    PreIPO marketed itself to potential investors as a company developing an online platform for investors to purchase and sell shares in private companies before their initial public offerings.

8.    PreIPO marketed itself to potential investors in a variety of ways: a website, which included a portion dedicated to soliciting individuals to invest in its $8.75 million "Seed Round";

direct emails to potential investors, which included documents setting forth PreIPO's business plan, a tear sheet, an investor deck, and a private placement memorandum ("PPM"); video demonstrations of its platform, posted on public websites such as YouTube and Vimeo, and phone calls between potential investors and PreIPO management, employees, or sales representatives working on PreIPO's behalf.

9. PreIPO's website and written materials described its management team, including its board of directors, chief executive officer, and other principals of PreIPO. The PPM disclosed that a key risk factor for investors was that, in sum and substance, they "will be relying on the judgment of [PreIPO's] Management regarding our use of proceeds." But investors were not told—in the PPM or elsewhere—that JOHN MATTERA, a/k/a "JD Mattera," the defendant, had any role at PreIPO, let alone that he exercised *de facto* control over the company or had previously been convicted of securities fraud. To the contrary, potential investors were specifically told that a professional and experienced management team managed PreIPO.

10. Some investors learned of the involvement of JOHN MATTERA, a/k/a "JD Mattera," the defendant, in PreIPO after they invested; they were told by MATTERA and others, falsely, that MATTERA was, in sum and substance, a consultant to PreIPO, or the person who was licensing trademarks to PreIPO, rather than the truth, which was that MATTERA controlled PreIPO. Nor were they told that MATTERA had recently finished serving a lengthy prison sentence for a federal securities fraud conviction and was barred from participating in the securities industry.

11. Through entities he controlled, JOHN MATTERA, a/k/a "JD Mattera," the defendant, at all relevant times, was the majority shareholder of PreIPO and its largest creditor. Moreover, notwithstanding that PreIPO had, at various times, different individuals serving as the

nominal Chief Executive Officer of the company, at all relevant times, MATTERA retained control over PreIPO in all material respects. For example:

a. MATTERA reviewed and approved written materials that were disseminated to investors, such as PreIPO's business plan, tear sheet, investor deck, and litigation disclosures.

b. MATTERA exercised final approval over disbursements of investor money raised by PreIPO, including for compensation, expenses, and vendor payments. In or about December 2022, MATTERA's spouse was added as a signatory to PreIPO's bank accounts.

c. MATTERA hired and fired people for key management positions at PreIPO, including the Chief Executive Officer, Chief Operating Officer, Chief Technology Officer, and Chief Legal Officer, as well as members of PreIPO's board of directors and "advisory board."

d. MATTERA directed the operations of PreIPO, including its strategic direction and day-to-day business operations.

e. MATTERA personally solicited investors and directed others at PreIPO to solicit potential investors.

12. As part of the scheme to defraud, JOHN MATTERA, a/k/a, "JD Mattera," the defendant, and his associates also misrepresented how PreIPO would use the money it raised from investors. For example:

a. In soliciting investors, PreIPO described the purpose of its $8.75 million capital raise as, in sum and substance, seeking to develop its technological platforms for trading privately held securities, and expanding its syndicate of broker-dealers who would use the platforms.

b. In the PPM provided to and signed by investors, PreIPO stated under the section "use of proceeds" that investor funds would be used, in sum and substance, to pay for the costs of the capital raise, and for "working capital, including, expansion of the management team[,]

development of the operating platform[,] and business-related costs and expenses." The PPM's "offering and investment related risks" section stated, in sum and substance, that PreIPO "expects to use the net proceeds for general corporate purposes, including working capital, capital expenditures, and for investment in expansion efforts."

13. The vast majority of the funds raised by PreIPO were not used to invest in the trading platform technology or generate revenue. PreIPO generated less than $2,500 in total revenue from its founding through the present. Instead, the $4.7 million raised from investors in PreIPO was either used to line the pockets of JOHN MATTERA, a/k/a, "JD Mattera," the defendant, and his associates, or to pay for PreIPO's efforts to raise more money from investors—payments to vendors and sales representatives, marketing, website design, and the like.

14. In furtherance of this scheme to misappropriate and misuse investor funds, JOHN MATTERA, a/k/a "JD Mattera," the defendant, and his associates did not disclose to investors that, at the time PreIPO was raising money from investors, PreIPO had already executed a contract with a company controlled by MATTERA. Under this contract, PreIPO owed MATTERA approximately $5 million, plus royalties, in exchange for licensing the trademark and domain name "PreIPO.com," and related trademarks. PreIPO also executed other undisclosed compensation "retainer" contracts with MATTERA and other PreIPO principals whereby PreIPO paid MATTERA and those principals a percentage of all money raised from investors within 24 hours of receipt of those funds. Under these undisclosed contracts, MATTERA was entitled to 14.3% of all investor funds raised, to be paid within 24 hours of receipt.

15. In total, during the course of the scheme, from in or about March 2021 through at least in or about February 2024, JOHN MATTERA, a/k/a, "JD Mattera," the defendant, and his associates and agents obtained approximately $4.7 million from approximately 50 investors in

PreIPO. Approximately $1.8 million of the capital contributions PreIPO received from investors were diverted to pay MATTERA and four other PreIPO officers and directors. MATTERA personally received a total of more than $945,000 in investors' funds.

### Statutory Allegations

16. From at least in or about March 2021 through in or about February 2024, in the Southern District of New York and elsewhere, JOHN MATTERA, a/k/a "JD Mattera," the defendant, willfully and knowingly, directly and indirectly, by the use of a means and an instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, to wit, MATTERA, and others working at his direction, made false and misleading statements to investors about PreIPO's management and operations, and misappropriated investor funds.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT TWO
## (Wire Fraud)

The Grand Jury further charges:

17. The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

18. From at least in or about March 2021 through in or about February 2024, in the Southern District of New York and elsewhere, JOHN MATTERA, a/k/a "JD Mattera," the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, MATTERA engaged in a scheme to obtain money from investors by means of false and misleading statements about PreIPO's management and operations and to misappropriate investor funds, and in furtherance of that scheme used interstate wires, some of which transited to, from, or through the Southern District of New York.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATIONS

19. As a result of committing one or more of the offenses charged in Counts One and Two of this Indictment, JOHN MATTERA, a/k/a "JD Mattera," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money

in United States currency representing the amount of proceeds traceable to the commission of said offense.

## Substitute Assets Provision

20. If any of the above-described forfeitable property, as a result of any act or omission by the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981(a)(1)(C);
Title 21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461.)

_____
GRAND JURY FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney